UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DALE B. GREEN,

    Petitioner,

v.                                  Case No. 3:15-cv-40-J-32PDB

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS and
FLORIDA ATTORNEY GENERAL,

    Respondents.
_____

**ORDER**

**I. Status**

Petitioner, an inmate of the Florida penal system, initiated this case by filing a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1).[1] He challenges his 2009 state court (Putnam County) judgment of conviction for first degree arson. He was sentenced to thirty-years imprisonment as a prison releasee reoffender. Respondents filed an Amended Response to the Petition (Doc. 8) and exhibits (Doc. 7-1 to 7-20; Ex.). Petitioner filed a Reply (Doc. 10) with exhibits (Doc. 11) and several supplements (Docs. 13, 15, 16, 17).[2] The case is ripe for review.[3]

---

[1] When citing to the Petition, the Court cites to the page numbers assigned by the Court's electronic case filing system.

[2] Doc. 13 is an amended "statement of facts" that the Court construed as a supplemental reply (Order, Doc. 14); Doc. 15 is a letter that includes case authority and additional argument; Doc. 16 is a notice of supplemental authority; and Doc. 17 is a supplemental reply.

[3] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th

## II. Governing Legal Principles

**A. Standard of Review**

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

> Under AEDPA, when a state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). A state court's factual findings are presumed correct unless rebutted by clear and convincing evidence.[] Id. § 2254(e)(1); Ferrell v. Hall, 640 F.3d 1199, 1223 (11th Cir. 2011).
>
> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes

---

Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court, and "further factual development" is not necessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

2

> federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

"[A] federal court reviewing the judgment of a state court must first identify the last adjudication on the merits. It does not matter whether that adjudication provided a reasoned opinion because section 2254(d) 'refers only to a decision' and does not 'requir[e] a statement of reasons.'" Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016) (quoting Richter, 562 U.S. at 98), cert. granted, 137 S. Ct. 1203 (2017). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99 (citation omitted). When the last adjudication on the merits "'is unaccompanied by an explanation,' a petitioner's burden under section 2254(d) is to 'show[] there was no reasonable basis for the state court to deny relief.'" Wilson, 834 F.3d at 1235 (quoting Richter, 562 U.S. at 98). "'[A] habeas court must determine what arguments or theories supported or . . . could have

3

supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court.'" Id. (quoting Richter, 562 U.S. at 102).

> When the reasoning of the state trial court was reasonable, there is necessarily at least one reasonable basis on which the state supreme court could have denied relief and our inquiry ends. In this way, federal courts can use previous opinions as evidence that the relevant state court decision under review is reasonable. But the relevant state court decision for federal habeas review remains the last adjudication on the merits, and federal courts are not limited to assessing the reasoning of the lower court.

Id. at 1239.[4]

### B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before filing a habeas petition in federal court, a petitioner must exhaust all available state court remedies. To exhaust state remedies, the petitioner must "fairly present[]" each issue raised in his federal petition to the state's highest court. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). This means that a "state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Raleigh v. Sec'y, Fla. Dep't of Corr., 827 F.3d 938, 956 (11th Cir. 2016) ("The petitioner must have presented the claim in a manner that affords the State a full and fair opportunity to address and resolve the claim on the merits." (quotations and citation omitted)), cert. denied, Raleigh v. Jones, 137 S. Ct. 2160 (2017). It is not

---

[4] Wilson is currently before the Supreme Court. However, even under pre-Wilson AEDPA jurisprudence, the result here would be the same.

4

"sufficient merely that the federal habeas petitioner has been through the state courts, nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015). Rather, "[t]he crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim." Id.

Failure to exhaust may result in a procedural default which raises a potential bar to federal habeas review. "A state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show 'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.'" Davila v. Davis, 137 S. Ct. 2058, 2064-65 (2017) (citing Wainwright v. Sykes, 433 U.S. 72, 84 (1977); Coleman v. Thompson, 501 U.S. 722, 750 (1991)). To show cause for a procedural default, "the petitioner must demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). "[T]o show prejudice, a petitioner must demonstrate that 'the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.'" Id. (quoting McCoy v. Newsome, 953 F.2d 1252, 1261 (11th Cir. 1992) (per curiam)).

A petitioner may also obtain review of a federal habeas claim that is procedurally defaulted if he can show that a fundamental miscarriage of justice has occurred; meaning that a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray, 477 U.S. at 496. Actual innocence means factual innocence, not legal

5

insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). "To be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id. at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.[]
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Counsel's

6

> errors must be "so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable." Id. at 687.

Richter, 562 U.S. at 104; Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d at 1277, 1284 (11th Cir. 2016) (recognizing that to proceed on a claim of ineffective assistance of trial counsel, "the petitioner has to show both that his counsel's performance was deficient and that that deficient performance was prejudicial—that is, that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (quoting Strickland, 466 U.S. at 687, 694)). Since both prongs of the two-part Strickland "test must be satisfied to show a Sixth Amendment violation, a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward v. Hall, 592 F.3d at 1163 (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)).

"'The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.'" Marshall, 828 F.3d at 1285 (quoting Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016)).

> "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 86.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014).

### III. Analysis[5]

**A. Ground One**

Petitioner refers to ground three of his Rule 3.850 motion, in which he claimed his trial counsel, John Stephenson, Esquire,[6] was ineffective during jury selection. See Petition at 5-6. Petitioner avers that some of the potential jurors indicated they knew some of the witnesses, and those potential jurors "vouched" for the witnesses' "credibility by saying that they were 'honest men,' 'good men,' and anything they say should be believed." Ex. M at 5. He acknowledges that his counsel advised the court of his concerns that the potential jurors' comments prejudiced the entire panel, but asserts that his "counsel failed to contemporaneously object and preserve for appellate review the trial court's refusal to replace the jurors." Id. (capitalization omitted).

During jury selection, one of the potential jurors acknowledged that she knew Detective Michael Lee Knowles and stated, "I would be more inclined to believe what he was saying. . . . I know him and he was a good man then" (referring to about 15 years prior). Doc. 1-2 at 3-4 (emphasis added).[7] Another potential juror indicated that he knew Lieutenant Mark Lynady. Id. at 4. When asked if the potential juror's knowledge of the witness would cause

---

[5] In Grounds One through Five and Eight, Petitioner states that the postconviction court erred in denying certain claims in his motion filed pursuant to Florida Rule of Criminal Procedure 3.850. Based on his supporting arguments, it is apparent that his intention is to raise the underlying claims that he raised in his Rule 3.850 motion.

[6] According to The Florida Bar's website, Mr. Stephenson was admitted to practice in 1976.

[7] The transcript of the entire jury selection was not provided to this Court; rather, only portions of the transcript were submitted by Petitioner. Respondents cite to the jury selection transcript in their Amended Response, but their citation does not match the exhibits filed.

him to give any greater or lesser weight to his testimony, the potential juror stated: "I would be inclined to say that he would be telling the truth, you know. I've known Mark a long time." Id. A third potential juror indicated he knew Michael Kelly, but he confirmed that his knowledge of the witness would not affect his ability to weigh the testimony. Id. at 4-5. A sidebar conference was held:

> MR. STEPHENSON: Your Honor, Mr. Green is very concerned. He feels like the whole panel here has been prejudiced. I guess the auditory remarks about some of the prospective witnesses in this case, and certainly, Mr. Lynady is a key witness, as is Detective Kelly. He's just concerned that the jurors who don't know the people would be influenced to believe them more based on what was said.
>
> THE DEFENDANT: They would.
>
> MR. STEPHENSON: The comment - - yeah, it's a good point.
>
> THE COURT: You know, we gave them a question and they give an honest answer. I tell them that there are no right or wrong answers. They just need to be honest with us. You're free to question all the other jurors about it and form your own opinions. So I don't think I can dismiss the panel . . . .
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: But you might be entitled to question the rest of them, okay.

Id. at 5-6. Later, the attorneys were permitted to ask questions of the jury panel. The State specifically questioned two of the three potential jurors with knowledge of the witnesses; they both affirmed that they could render a fair and just verdict.[8] Doc. 11-8 at 8. Petitioner's

---

[8] As to the third potential juror with knowledge of a witness, the State said: "And you were pretty clear up front about Mr. Kelly, so I don't need to go through that with you again." Doc. 11-8 at 8.

9

counsel then followed-up with these three jurors. Id. at 9-11. His counsel also questioned the entire panel. Id. at 12-14.[9]

The postconviction court denied this claim: "The comments referred to by Defendant cannot be found in the transcripts. Defendant does not provide an exhibit pinpointing what he is referring to." Ex. S at 2-3. The Fifth District Court of Appeal (DCA) per curiam affirmed the denial of this claim without a written opinion. Ex. Y.

Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Even assuming the state court's decision is not entitled to deference, the claim has no merit. Counsel voiced Petitioner's concerns regarding the impact of the potential jurors' statements on the entire panel, and the trial court rejected the notion of dismissing the entire panel on that basis. Counsel specifically followed-up with those three jurors and questioned the entire jury panel. Only one juror who was present when the comments were made was selected to sit on Petitioner's jury; he has not shown any actual bias on behalf of

---

[9] Based on a review of the jury selection transcript obtained from the state court docket, none of the three jurors who knew the witnesses were selected for the jury. Only one individual who was present when the "vouching" comments were made was selected to sit on the jury and participate in the deliberations. See also Ex. R at 2-3 (Petitioner's Rule 3.850 reply brief: "Defendant asserts that one of the potential jurors, who heard the vouchful remarks . . . was Sheila Cates. Ms. Cates[] ultimately ended up on Defendant's jury."); Reply at 2, 24 (referring to two jurors, Sheila Cates and Charlene Nahabedian, as being on the jury, but Ms. Nahabedian was an alternate and did not deliberate with the rest of the jury (Ex. B at 295-97)).

that juror. Petitioner has not shown deficient performance or resulting prejudice. He is not entitled to federal habeas relief on Ground One.

**B. Ground Two**

Petitioner refers to ground ten of his Rule 3.850 motion, arguing that counsel was ineffective for not moving for a mistrial when the victim provided opinion testimony on Petitioner's guilt. See Petition at 7; Ex. M at 13. Petitioner recognizes that counsel objected to the question and the objection was sustained, but the victim had already answered the question. See Petition at 7; Ex. M at 13.

On direct examination, the victim testified:

> Q. . . . [W]hen you walked out . . . of your apartment, your home's on fire, did you ever see the defendant?
>
> A. No, ma'am.
>
> . . . .
>
> Q. . . . [D]id you have any idea of . . . who might have started this fire?
>
> > MR STEPHENSON: Objection. Calls for an opinion, your Honor.
> >
> > THE COURT: If she can answer, I'll allow the question. . . . Overruled.
>
> . . . .
>
> Q. Do you know who started the fire?
>
> A. . . . I didn't actually see it with my own eyes.
>
> Q. But do you believe that the defendant started the fire?
>
> > MR. STEPHENSON: Objection, your Honor.

11

> A. Yes, I do.
>
> > MR. STEPHENSON: What she believes is not admissible.
> >
> > THE COURT: Sustained.

Ex. B at 37-38. Petitioner's counsel then questioned the victim, pointing out multiple inconsistencies in her testimony. Id. at 39-44, 48-50.

The postconviction court denied the claim, finding that Petitioner failed to demonstrate prejudice under Strickland. Ex. S at 4. The court reasoned that Petitioner's "[t]rial counsel effectively impeached the witness through cross-examination showing that the victim made inconsistent statements to the police and testified at trial differently than in her deposition." Id. The Fifth DCA per curiam affirmed the denial of this claim without a written opinion. Ex. Y.

Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Even assuming the state court's decision is not entitled to deference, the claim is meritless. Counsel did object to the question and the trial court sustained the objection. Counsel could have decided as part of sound trial strategy not to draw any further attention to the victim's comment and instead, effectively cross-examine her and call into question her credibility. Petitioner has failed to show his counsel's performance was deficient, nor has he shown resulting prejudice. The Court finds Petitioner is not entitled to federal habeas relief on Ground Two.

**C. Ground Three**

Petitioner argues that the State's witness, Steven Bellamy, was not sworn under oath prior to testifying, and thus his counsel was ineffective for failing to object and move for a mistrial. See Petition at 8-9. Before the State began presenting its case, three of the State's witnesses were sworn: Erma Dean (the victim), an unidentified individual, and Terrell Anderson. See Ex. B at 23-24, 26. Ms. Dean testified first, Mr. Anderson testified second, and Mr. Bellamy testified third. See id. at 28, 51, 76. Before Mr. Bellamy testified, the Court stated: "[Y]ou've already been sworn." Id. at 76.

Petitioner raised this claim as ground sixteen in his Rule 3.850 motion. Ex. M at 20-21. The postconviction court denied the claim, finding it to be "directly refuted by the record." Ex. S at 6. The Fifth DCA per curiam affirmed without a written opinion. Ex. Y.

Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Even assuming the state court's decision is not entitled to deference, the claim is meritless. Petitioner has failed to show his counsel's performance was deficient, nor has he shown resulting prejudice. He is not entitled to federal habeas relief on Ground Three.

**D. Grounds Four and Eight**

In both of these grounds, Petitioner refers to claim eighteen of his Rule 3.850 motion, asserting that his counsel was ineffective for failing to file a motion for a new trial. See Petition at 10, 17. He claims that the State's theory regarding how Petitioner started the fire

"is seriously flawed." Id. at 17. The postconviction court denied the claim, reasoning that "[t]he fact that Trial Counsel did not agree with the outcome of the trial would not necessarily compel a sufficiently competent attorney to request a new trial. Additionally, Defendant filed a Petition on the matter which was ultimately dismissed." Ex. S at 6. The Fifth DCA per curiam affirmed the denial of this claim without a written opinion. Ex. Y.

Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Even assuming the state court's decision is not entitled to deference, the claim is meritless. The testimony and evidence presented at trial was sufficient to support the conviction.[10] Thus, assuming arguendo that Petitioner's counsel was deficient in failing to file a motion for a new trial as Petitioner suggests (which this Court is not finding), Petitioner has failed to show prejudice. He is not entitled to federal habeas relief on Grounds Four or Eight.

**E. Ground Five**

Petitioner contends his counsel was ineffective for failing to timely object when the prosecutor solicited false testimony from Captain Meyers. See Petition at 11-12; Ex. M at 44 (raised as ground thirty-five in his Rule 3.850 motion). Petitioner points to the following trial testimony of Captain Meyers:

---

[10] Counsel did move for a judgment of acquittal at the close of the State's case. See Ex. B at 262-63. The trial court denied the motion and found that the State presented "sufficient evidence to allow - - to go to the jury." Id. at 268.

> Q. . . . [W]hen you opened the door, did you see anything else outside that was on fire besides the roof?
>
> A. There was a chair.
>
> Q. Okay. Did you actually see the chair on fire itself?
>
> A. Yes, sir.
>
> Q. Okay. So what did you guys do next?
>
> A. Firefighter Randy Brown had the nozzle in his hand. He started putting water on the chair that was on fire.
>
> . . . .
>
> Q. I believe you had stated that when you opened the back door, you knocked the chair off the porch; is that correct?
>
> A. Yes.

Ex. B at 138, 145.

In denying this claim, the postconviction court recognized that "[t]he witness had not previously testified to knocking the chair off the porch." Ex. S at 11. However, the court found that "to be a small detail and not indicative false testimony." Id. The court reasoned that "the witness confirmed that he knocked the chair off the porch, regardless of whether he testified to it prior. Had Trial Counsel pointed this out, it is not clear this would have led to a mistrial or that the outcome of the proceedings would have been different." Id. The Fifth DCA per curiam affirmed the denial of this claim without a written opinion. Ex. Y.

Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an

unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Even assuming the state court's decision is not entitled to deference, the claim lacks merit. Petitioner has failed to show his counsel's performance was deficient, nor has he shown resulting prejudice. He is not entitled to federal habeas relief on Ground Five.[11]

### F. Ground Six[12]

Petitioner claims that the postconviction court erred by failing to attach specific portions of the record to its order showing that Petitioner was not entitled to relief. See Petition at 13-14. The purpose of a federal habeas proceeding is to review the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution

---

[11] In his supplemental filings, Petitioner argues that the prosecutor committed a Giglio v. United States, 405 U.S. 150 (1972), violation by presenting this allegedly false testimony. Docs. 13, 15, 16, 17. Even if this claim was properly presented to this Court, Petitioner is not entitled to relief. He raised this claim in a petition for writ of habeas corpus. Ex. CCC. The state court denied the petition: "First, it does not entirely appear that the Petitioner's claim has merit as the jury as the fact finder deliberated a decision. Second, the Petition appears to raise a claim that could or should have been raised on direct appeal." Ex. DDD. Petitioner appealed. Ex. EEE. The State responded and argued that the trial court should have dismissed the petition rather than deny it because the petition was "nothing more than a thinly veiled attempt to circumvent the 3.850 time bar," and the "issue could have been presented on direct appeal and/or in [Petitioner's] earlier post-conviction motion." Ex. GGG. The Fifth DCA per curiam affirmed without a written opinion. Ex. III.

To the extent the state court rejected the claim based on a procedural bar, the claim is likewise barred here. Petitioner has failed to show cause and prejudice or a fundamental miscarriage of justice to excuse the bar. Insofar as the state court adjudicated the claim on the merits, this Court applies AEDPA's deferential standard. Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to federal habeas relief on this claim.

[12] To the extent Petitioner challenges in Ground Six the same claims raised in Grounds Four and Eight, Ground Six is denied for the same reasons stated as to Grounds Four and Eight.

or laws of the United States. Coleman, 501 U.S. at 730. "Indeed, questions of state law rarely raise issues of federal constitutional significance and, therefore, '[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'" Sneed v. Fla. Dep't of Corr., 496 F. App'x 20, 24-25 (11th Cir. 2012) (quoting Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir.1983)). Because "defects in state collateral proceedings do not provide a basis for habeas relief," Petitioner is not entitled to federal habeas relief on this claim. Carroll v. Sec'y, DOC, 574 F.3d 1354, 1365 (11th Cir. 2009); see Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) ("Neither the state court's failure to hold a hearing on petitioner's 3.850 motion nor its failure to attach the relevant portions of the record in any way undermines the validity of petitioner's conviction[;]" therefore, such a claim "does not state a basis for habeas relief.").

### G. Ground Seven

Petitioner asserts that the trial court erred when it dismissed his habeas corpus petition, in which he argued "the prosecutor knowingly presented false testimony" during the redirect examination of State witness Steven Bellamy. See Petition at 15. He concludes that "the trial court should have made the state prove beyond a reasonable doubt that the error did not effect the verdict." Id.

To the extent Petitioner is challenging the state court's procedures in handling his claim or otherwise raising a state law claim, the claim is not cognizable on federal habeas review. Insofar as he is attempting to raise a claim that the prosecutor presented false testimony in violation of Giglio v. United States, 405 U.S. 150 (1972), and assuming the

17

claim is not procedurally barred,[13] Petitioner is not entitled to relief because the claim has no merit. "[T]o succeed on a Giglio claim, a petitioner must prove (1) that the prosecution used or failed to correct testimony that he knew or should have known was false and (2) materiality—that there is any reasonable likelihood the false testimony could have affected the judgment." Rodriguez v. Sec'y, Fla. Dep't of Corr., 756 F.3d 1277, 1302 (11th Cir. 2014). After reviewing the record, this Court concludes that Petitioner has not met the Giglio standard. Thus, he is not entitled to relief on Ground Seven.

Accordingly, it is

**ORDERED**:

1. The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk shall enter judgment denying the Petition and dismissing this case with prejudice and thereafter close the file.

3. If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.[14] Because the Court has determined that a certificate of appealability is not

---

[13] Respondents argue this claim is procedurally barred but failed to provide citations to the record to support their argument. Amended Response at 12. Petitioner indicates that he refiled this claim in a petition for writ of habeas corpus in the Florida Supreme Court. See Petition at 16 (referring to Ex. OOO). The Florida Supreme Court dismissed the petition as unauthorized. Ex. PPP.

[14] This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), "or that the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting Slack, 529 U.S. at 484). "Where a

warranted, the Clerk of Court shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** in Jacksonville, Florida, this 1st day of March, 2018.

_____
TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 2/27
c:
Dale B. Green, #R13013
Counsel of Record

---

district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484. However, "[w]hen the district court denies a habeas petition on procedural grounds . . . a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. After consideration of the record as a whole, the Court denies a certificate of appealability.